UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KELECHI IBEZIM, | ) | Case No.: 1:22-CV-1630 |
| Plaintiff, | ) | |
| vs. | ) | |
| MARIAN UNIVERSITY, INC., | ) | |
| Defendant. | ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Kelechi Ibezim ("Ibezim"), by counsel, files this Complaint and Demand for Jury Trial against Defendant Marian University ("Marian"), alleging violation of Title IX and Title VI.

### I. PARTIES, VENUE, AND JURISDICTION

1. Ibezim is a citizen of Indiana and resident of Marion County.

2. Defendant is a nonprofit corporation incorporated under the laws of Indiana with its principal place of business in Indianapolis, Indiana.

3. Ibezim is a former student at the Marian University College of Osteopathic Medicine ("MU-COM").

4. This Court has personal jurisdiction over Plaintiff and Defendant.

5. This Court has subject matter jurisdiction over Ibezim's Title IX claim pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1681.

6. This court has subject matter jurisdiction over Ibezim's Title VI claim pursuant to 28 U.S.C. § 1331 and 42 U.S.C.A. § 2000d.

7.  This Court has personal jurisdiction over Defendant, and venue is proper pursuant to 28 U.S.C. § 1391, because Defendant is located in Indiana, Defendant's unlawful action occurred in the Southern District of Indiana.

## II.  FACTUAL ALLEGATIONS

8.  Ibezim hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth here.

9.  Ibezim was a student at MU-COM from August 2016-February 2022.

10. Upon information and belief, Ibezim was one of only two Black female students in her matriculating class at MU-COM. However, the other Black female student withdrew from the program shortly after the August 2016 orientation.

11. On or about November 23, 2016, Ibezim was falsely accused of academic misconduct related to her anatomy exam.

12. MU-COM investigated the alleged academic misconduct. The investigation lasted for four weeks, where the MU-COM Task Force on Professionalism questioned Ibezim's classmates about her whereabouts leading up to the final anatomy exam.

13. MU-COM never informed Ibezim of the outcome of the investigation.

14. The stress of the investigation and lack of conclusion negatively impacted Ms. Ibezim's performance on her remaining exams and courses.

15. On or about December 1, 2016, Ibezim was placed on academic probation following her performance in Scientific Foundations of Medicine in Fall 2016.

16. Following her failure of Cardiopulmonary and Renal Systems (CPR), Ibezim's academic probation status was extended "until all Year 1 courses are successfully passed."

17. Ibezim was required to repeat Year 1 curriculum, beginning with orientation on August 7, 2017.

18. After being placed on academic probation, because Ibezim is a Black female, MU-COM staff treated Ibezim as though she must have gotten there only by luck, by chance, or by cheating despite how hard she worked and progressed.

19. Beginning in January 2017, MU-COM repeatedly encouraged Ibezim to withdraw.

20. Ibezim successfully remediated her first year, but for unexplained reasons, MU-COM repeatedly extended her academic probation.

21. Ibezim was repeatedly restricted from participating in the Student National Medical Association ("SNMA"), an organization that supports medical students who are underrepresented in medicine.

22. Kaylee Hofmeister, Graduate Learning Support Specialist, repeatedly sent abrasive emails to Ms. Ibezim, reminding her that she was prohibited from participating in SNMA related activities.

23. Ms. Hofmeister instructed Ibezim that she could not serve on the 2017-2018 SNMA Executive Board.

24. In April 2017, Ms. Hofmeister instructed Ibezim not to attend the SNMA conference.

25. On or about June 15, 2018, Ibezim showed Ms. Hofmeister's emails to Clint Whitson (Assistant Dean of Student Affairs). Mr. Whitson agreed to speak with Ms. Hofmeister regarding the negative tone of her emails.

26. In November 2018, Ms. Hofmeister prohibited Ibezim from attending a volunteer event with SNMA at DePauw University, asserting that this was due to Ibezim being on academic probation and it being a school funded event.

27. Ms. Hofmeister again instructed that Ibezim was not allowed to hold an executive board position in 2018-2019, because Ibezim remained on academic probation.

28. During that time, Ibezim had successfully remediated her first year and was passing all of her second-year classes.

29. Ibezim found it difficult to remain motivated, after being repeatedly denied access to participate in SNMA, which negatively impacted her academic performance.

30. In the Spring of 2018, Ibezim failed her Neuroscience, EENT and Motor Systems (NEMS) course.

31. On or about June 5, 2018, Ibezim inquired about her probation duration during a Student Promotion and Academic Progress Committee ("SPAPC") hearing regarding the NEMS course. Michael Koluch, Graduate Learning Support Specialist, stated that MU-COM reserved the right to keep Ibezim on probation for as long as they saw fit.

32. In the Summer of 2018, Ibezim successfully remediated the NEMS course.

33. In August 2018, after passing the NEMS remediation, Ibezim met with Mr. Koluch to receive further academic support. Mr. Koluch stated, "We knew you were going to pass the NEMS remediation, but you needed to be taught a lesson." Ibezim understood this comment to refer to her prior involvement with SNMA.

34. Ibezim's academic probation status was not lifted, nor was Ibezim given any concrete goals or objectives to work toward attaining a status of good standing.

35. In the Fall of 2018, a new grading policy was implemented related to the GI, Endocrine and Metabolism course (GEM). Students were required to pass the GI System, and either the Endocrine or Metabolism Systems, in order to pass the course. That policy was removed the following academic year.

36. Ibezim failed the GI System but passed the Metabolism System, with the Endocrine System pending.

37. On or about January 10, 2019, Ibezim received another letter from SPAPC, recommending immediate dismissal due to failure of GI, Endocrine and Metabolism (GEM).

38. On or about January 16, 2019, Ibezim appealed the dismissal to the Dean of MU-COM.

39. Following Ibezim's appeal, the MU-COM Dean reversed the decision, but forced Ibezim to sign a "contract" under duress indicating that she would be immediately dismissed without appeal rights upon any further course or clerkship rotation failures.

40. On information and belief, MU-COM has not forced a non-Black student to sign a similar contract.

41. Ibezim completed an outpatient general surgery rotation at the Indiana Hernia Center from March 1, 2021, through March 24, 2021. Ibezim's evaluation stated, "Inquisitive and asks questions frequently when does not have fund of knowledge or confused. Keep up the good work of asking lots of questions and trying to learn."

42. Ibezim was progressing toward graduation, with no course or clerkship rotation failures, until her urology rotation that took place from August 2 through August 27, 2021.

43. Ibezim's urology rotation evaluation was completed by Dr. John Ramsey, Dr. Scott Pike, Dr. Aaron Ludwig, and Dr. Kenneth Ney.

44. Ibezim was the only medical student assigned to the site for the urology rotation.

45. This rotation setting was an outpatient clinical practice. Every preceptor was a Caucasian male, and all other support staff members were Black females.

46. Dr. Ramsey repeatedly pronounced a Black female medical assistant's name incorrectly.

47. Ibezim primarily observed Dr. Ramsey work at the site for the month, except for a single instance when Ibezim was invited to scrub in.

48. Ibezim sought feedback regularly throughout the rotation, but Dr. Ramsey would brush her off.

49. In August 2021, Ibezim passed the COMLEX Level 1, and informed Dr. Ramsey that her best performance was in the genitourinary system. Dr. Ramsey chuckled and replied, "That will likely change after this rotation."

50. Dr. Ramsey's only feedback consisted of telling her that some of her questions were "weird" or that he "did not know why she would ask something like that because that is a question for a primary physician."

51. Dr. Ramsey did not offer explanations for why he felt Ibezim's questions were "weird" or offer any advice for improvement.

52. The interactions between Ibezim and Dr. Ramsey mainly consisted of questions initiated by Ibezim, without further teaching opportunities.

53. Dr. Ramsey did not assess Ibezim's competencies in medical knowledge and patient care by direct observation, quizzes, or questioning.

54. The other preceptors were more engaging with Ibezim, and provided positive feedback.

55. Dr. Pike provided feedback after Ibezim presented her findings on phimosis versus paraphimosis and stated she was performing appropriately for a third-year student.

56. Dr. Ludwig allowed Ibezim one-time EMR access to gather history prior to interviewing a patient with urinary incontinence. Dr. Ludwig provided positive feedback to Ibezim after she presented her findings to him regarding that patient.

57. Dr. Ney quizzed Ibezim on screening recommendations for prostate cancer, and agreed with her answer.

58. Ibezim was not given any indications that she would fail her urology rotation.

59. On information and belief, on October 18, 2021, the Clerkship Director communicated with Dr. Ramsey, who confirmed that Ibezim failed the urology rotation. Ibezim was not present at this meeting.

60. On October 20, 2021, Ibezim received an email from the Clerkship Director, who requested to set up a meeting to go over Ibezim's evaluation from Dr. Ramsey.

61. Ibezim received formal notification of the urology failure during her meeting with the Clerkship Director on October 27, 2021.

62. The reason stated for Ibezim's failure of the rotation was for "medical knowledge and patient care."

63. On or about December 16, 2021, Ibezim spoke to Dr. Ramsey about her poor evaluation in passing during her nephrology rotation. Dr. Ramsey stated that he did not want to keep "passing [Ibezim] along," implying his belief that Ibezim had already been "passed along" up to that point, rather than progressing because of her own merit, because she is a Black female.

64. On or about November 2, 2021, after receiving the failing rotation grade, Ibezim met with Clint Whitson about filing a grievance.

65. Mr. Whitson informed Ibezim that there are two types of grievances: (a) an error of grading, which is handled by the medical school, or (b) discrimination, which is reported to the Title IX team. Mr. Whitson explained that Ibezim would need to have "written evidence" and "supporting documents" in order to be successful with claim, causing Ibezim to feel discouraged from filing a claim.

66. On or about January 5, 2022, Ibezim filed a formal Title IX report.

67. The SPAPC recommended Ibezim for dismissal again, however her appeal was suspended pending the outcome of the Title IX investigation, which is ongoing.

68. Ibezim failed her psychiatry clerkship rotation as a result of two failed attempts of the psychiatry COMAT examination.

69. On or about February 18, 2022, the SPAPC met again and recommended immediate dismissal, even though Ibezim's Title IX report remained pending.

70. Following the recommendation of immediate dismissal, Ibezim appealed the decision, but her appeal was unsuccessful and Ibezim was ultimately dismissed.

## LEGAL ALLEGATIONS

### Count I: Violation of Title IX, 20 U.S.C § 1681

71. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth here.

72. Ibezim is a Black female and a member of a protected class.

73. At all relevant times, Defendant Marian University received and accepted federal funding and/or financial assistance from the United States Government.

74. Ibezim had a federally recognized right to not be subject to sex discrimination while she participated in Marian University's educational programs or activities.

8

75. Ibezim suffered disparate and discriminatory treatment when MU-COM: (a) accused her of academic misconduct; (b) declined to change Ibezim's standing after she successfully remediated her courses; (c) repeatedly prohibited Ibezim from participating in extra-curricular organizations and activities; (d) repeatedly recommended Ibezim's dismissal; (e) repeatedly encouraged Ibezim to withdraw; and (f) dismissed Ibezim from MU-COM.

76. Defendant accused Ibezim of academic misconduct without basis because of her race and gender.

77. Defendant kept Ibezim on probation without explanation because of her race and gender.

78. Defendant restricted Ibezim's participation in student organizations because of her race and gender.

79. Defendant repeatedly recommended Ibezim's dismissal because of her race and gender.

80. Defendant repeatedly encouraged Ibezim to withdraw from MU-COM because of her race and gender.

81. Defendant dismissed Ibezim because of her race and gender.

82. Defendant intentionally discriminated against Ibezim on the basis of her race and gender.

83. Ibezim has suffered emotional and economic harm as a result of Defendant's intentional discrimination.

### Count II: Race Discrimination in Violation of Title VI, 42 U.S.C. § 2000d

84. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth here.

85. Ibezim, a Black female, is a member of a protected class.

86. Ibezim had a federally recognized right to not be subject to racial harassment while she participated in Marian University's educational programs or activities.

87. Ibezim suffered disparate and discriminatory treatment when MU-COM: (a) accused her of academic misconduct; (b) declined to change Ibezim's standing after she successfully remediated her courses; (c) repeatedly prohibited Ibezim from participating in extra-curricular organizations and activities; (d) repeatedly recommended Ibezim's dismissal; (e) repeatedly encouraged Ibezim to withdraw; and (f) dismissed Ibezim from MU-COM.

88. Ibezim suffered harassment so severe and pervasive that it deprived her of access to educational benefits, including participation in student organizations and enrollment in MU-COM.

89. Ibezim has suffered emotional and economic harm as a result of Defendant's intentional discrimination and harassment.

### Count III: Harassment in Violation of Title VI, 42 U.S.C. § 2000d

90. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth here.

91. Ibezim, a Black female, is a member of a protected class.

92. Ibezim had a federally recognized right to not be subject to racial discrimination while she participated in Marian University's educational programs or activities.

93. Ibezim suffered severe and pervasive race-based harassment when MU-COM: (a) accused Ibezim of academic misconduct and questioned Ibezim's classmates about her whereabouts leading up to the final anatomy exam; (b) repeatedly prohibited Ibezim from participating in extra-curricular organizations and activities despite her successful remediation of

courses; (c) forced Ibezim to sign a "contract" under duress; (d) repeatedly recommended Ibezim's dismissal; and (e) repeatedly encouraged Ibezim to withdraw from MU-COM.

94. Defendant accused Ibezim of academic misconduct without basis because of her race and gender.

95. Defendant kept Ibezim on probation without explanation because of her race and gender.

96. Defendant restricted Ibezim's participation in student organizations because of her race and gender.

97. Defendant repeatedly recommended Ibezim's dismissal because of her race and gender.

98. Defendant repeatedly encouraged Ibezim to withdraw from MU-COM because of her race and gender.

99. Defendant dismissed Ibezim because of her race and gender.

100. Defendant intentionally discriminated against Ibezim and subjected Ibezim to harassment and a hostile work environment on the basis of her race and gender.

101. Ibezim has suffered emotional and economic harm as a result of Defendant's intentional discrimination.

## RELIEF REQUESTED

Ibezim requests the following relief:

a. Declaratory relief from MU-COM's discriminatory dismissal of Ibezim, including Ibezim's reinstatement and an opportunity to remediate her urology rotation and psychiatry COMAT exam;

b. Damages for economic harm including the cost of her education and lost wages;

    c.  Damages for emotional distress, mental anguish, and pain and suffering;

    d.  All costs and reasonable attorney fees incurred in litigating this action;

    e.  Pre-judgment and post-judgment interest; and

    f.  Any and all other legal and/or equitable relief to which Plaintiff is entitled.

Respectfully submitted,

*/s/ Kathleen A. DeLaney*
Kathleen A. DeLaney (#18604-49)
Annavieve C. Conklin (#33875-32)
*Attorneys for Plaintiff Ibezim*
DELANEY & DELANEY LLC
3646 N. Washington Blvd.
Indianapolis, IN  46205
Tel. 317.920.0400
Fax  317.920.0404
Kathleen@delaneylaw.net
aconklin@delaneylaw.net

## JURY DEMAND

Plaintiff, Ibezim, by counsel, hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Kathleen A. DeLaney*
Kathleen A. DeLaney (#18604-49)
Annavieve C. Conklin (#33875-32)
DELANEY & DELANEY LLC
3646 Washington Blvd.
Indianapolis, IN 46205
*Attorneys for Plaintiff Ibezim*